<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA | Crim. No.: 15-609 (KSH) |
| v. | |
| MARLON PEEK a/k/a MALIK UHURU MUGABE, | **OPINION** |
| *Defendant.* | |

**<u>Katharine S. Hayden, U.S.D.J.</u>**

**I.    Introduction**

This matter is before the Court on defendant Marlon Peek a/k/a Malik Uhuru Mugabe's[1]

second motion for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A).  (D.E. 160.)  He

cites health issues and a circulating Covid-19 variant, as well as his rehabilitative efforts.  The

government opposes.  The matter is fully briefed.[2]  For the reasons set forth below, the motion

will be denied.

---

[1] Defendant was convicted and sentenced under the name Marlon Peek, and later legally changed his name to Malik Uhuru Mugabe; defendant's judgment remains in his prior name and his religious, legally adopted name is used in this opinion and the accompanying order alongside his committed name.  (*See* D.E. 168, 11/12/25 Opinion.)

[2] The parties' submissions on this motion were comprised of defendant's motion (D.E. 160), his request "to file a sur-reply within 14 days after the Government submits" its opposition to the motion (D.E. 162), the government's request for an extension of time to file its opposition (D.E. 163), defendant's opposition to that extension request (D.E. 165), defendant's letter "lodging [his] complaint" regarding the Court's order granting the government's opposition extension request before acting on defendant's "sur-reply" request (D.E. 166), the government's opposition to defendant's motion (D.E. 167), defendant's reply in support of his motion (D.E. 171), and defendant's "Letter of Complaint" seeking an "immediate ruling" on his § 3582 motion (D.E. 174).  Amid these submissions, defendant also filed two motions relating to his restitution

1

## II.    Background

The Court's opinion denying defendant's first § 3582(c)(1)(A) motion, which made

similar arguments, summarized his convictions and ensuing sentence:

> Defendant . . . is serving a 17-year sentence for a series of bank robberies and
> carjackings he committed or attempted to commit in the spring of 2015.  [He]
> pled guilty to (i) seven counts of bank robbery in violation of 18 U.S.C. §§
> 2113(a) and 2; (ii) one count of attempted bank robbery with a dangerous weapon
> in violation of 18 U.S.C. §§ 2113(a), 2113(d), and 2; (iii) one count of carjacking
> in violation of 18 U.S.C. §§ 2119(1) and 2; (iv) three counts of attempted
> carjacking in violation of 18 U.S.C. §§ 2119(1) and 2; (v) one count of use of a
> firearm during a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii)
> and 2; and (vi) one count of forced accompaniment in attempt to avoid
> apprehension in violation of 18 U.S.C. §§ 2113(e) and 2.  (D.E. 84, Am.
> Judgment.)  He was sentenced in August 2018 to 17 years' imprisonment, which
> was the mandatory minimum sentence under the statutes of conviction, followed
> by five years of supervised release.  (*Id.*)

(D.E. 122, 12/29/21 Opinion, at 1.)

Defendant is currently incarcerated at FCI Fort Dix, with an anticipated release date of

November 25, 2029.  *See* Federal Bureau of Prisons, *Find an inmate*,

https://www.bop.gov/inmateloc/, Reg. No. 67375-050 (last visited June 30, 2026).[3]

## III.    Discussion

The statute defendant relies on, 18 U.S.C. § 3582(c)(1)(A), "allows a district court to

reduce a prison term 'after considering the factors set forth in section 3553(a) to the extent that

they are applicable' if the court finds that 'extraordinary and compelling reasons warrant such a

---

obligation.  (D.E. 172, 173.)  The restitution-related motions will be addressed by separate
ruling.

[3] Even if this Court granted relief, defendant would still be subject to his state sentence.  As
noted in the Court's earlier opinion, defendant is concurrently serving a 13-year sentence
imposed in state court for separate offenses, including two counts of first-degree robbery, that he
committed in 2014.  (D.E. 122, at 2 n.1; D.E. 114-2.)  His earliest possible release date on that
sentence is January 1, 2028.  *See* State of New Jersey Dep't of Corr., Offender Search Form,
https://www-doc.state.nj.us/DOC_Inmate/inmatefinder?i=I, SBI No. 000161818D (last visited
June 30, 2026).

reduction' and that 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *Rutherford v. United States*, 146 S. Ct. 1320, 1327 (2026). The Court also must be able to determine that the defendant is "not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(a)(2).

Before filing a motion under § 3582(c)(1)(A), a defendant must fully exhaust administrative remedies within the BOP or wait 30 days from when the facility's warden receives the administrative request, whichever comes first. *United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020) (per curiam). There is no dispute that the exhaustion requirement is met here. Defendant represents that he requested compassionate release from the warden on August 3, 2025, and did not receive a response. (D.E. 160, Def.'s Mot., at 1 & Ex. A.) The government adds that the BOP "effectively denied" the request on August 11, 2025, satisfying the exhaustion requirement. (D.E. 167, Govt. Opp. 8 n.9 & Ex. G.)

The remaining requirements, however, are not met. First, the "extraordinary and compelling reasons" requirement: section 3582 does not define what that terminology means; and Congress tasked the U.S. Sentencing Commission with doing so through policy statements. *Rutherford*, 146 S. Ct. at 1327 (citing 28 U.S.C. § 994(t)). The relevant Sentencing Guidelines policy statement, § 1B1.13, states that medical circumstances qualify only if:

> **(B)** The defendant is--
>    **(i)** suffering from a serious physical or medical condition,
>    **(ii)** suffering from a serious functional or cognitive impairment, or
>    **(iii)** experiencing deteriorating physical or mental health because of the aging process,
>    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> **(C)** The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

**(D)** The defendant presents the following circumstances--
  **(i)** the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
  **(ii)** due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
  **(iii)** such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1)(B)-(D).[4]

With respect to his medical conditions, defendant cites Type 2 diabetes, morbid obesity, a weakened immune system that he attributes to the BOP's care, high blood pressure, sciatica, gastrointestinal issues, and a need for back surgery.  (D.E. 160.)  His medical records dating back several years, which the government attaches to its opposition, do not reflect any conditions or impairments that "substantially diminish[]" defendant's "ability to provide self care within the environment of a correctional facility and from which he . . . is not expected to recover," nor do they reflect any conditions requiring "long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration or death."  U.S.S.G. § 1B1.13(b)(1)(B)-(C).

Instead, the records reflect appointments with BOP and external medical providers for a variety of conditions, testing in response to medical complaints defendant was reporting, treatment (including medication) for defendant's chronic conditions, adjustments to medications at defendant's request, and defendant's periodic refusal of recommended interventions and no-showing to appointments.  (D.E. 167-5, 167-6, Ex. E, p. 2-7, 20, 55, 112, 115, 120, 124-30; D.E.

---

[4] There is no argument that defendant is suffering from a terminal illness, which is the other ground made available under U.S.S.G. § 1B1.13(b)(1).

4

167-7, Ex. F, p. 6, 15, 26, 37, 51, 68, 71, 85, 90, 107, 131, 135, 142, 144, 151.)  There is no indication that any of defendant's complaints or conditions were so severe or limiting as to prevent him from caring for himself, or that he required but was not receiving treatment for other conditions, such as sciatica, back issues, or high blood pressure.  (*See, e.g.*, D.E. 167-5, 167-6, Ex. E, p. 23, 46 (addressing sciatica complaints), 113, 124 (results of spine x-rays); D.E. 167-7, Ex. F, p. 18 ("Elevated BP readings without diagnosis of the HTN [hypertension]. . . Will schedule for the BP checks. . . Importance of daily exercises and DASH diet reinforced"); p. 27 ("No sign or movement to suggest patient is symptomatic from lumbar disease.").)  All considered, defendant has not shown that the BOP isn't providing, or can't provide, the necessary treatment for his conditions.  *See, e.g.*, *United States v. Champney*, 2024 WL 625278, at *5-6 (E.D. Pa. Feb. 13, 2024) (defendant's medical conditions, including diabetes and in-remission colon cancer, that could be treated effectively in prison did not qualify as extraordinary and compelling reason for sentence reduction), *aff'd on other grounds*, 2024 WL 4367934 (3d Cir. June 26, 2024).

Defendant's next argument is that "18 states are reporting very high levels of Covid variants on the rise," and attributes this to a particular variant.  (D.E. 160, at 2.)  Generalized fear of Covid-19 does not suffice for relief.  *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).  And the current policy statement only recognizes infectious disease as a medical circumstance qualifying as an extraordinary and compelling reason where a defendant has shown, *inter alia*, actual or imminent risk of an infectious disease outbreak specific to his institution, or an ongoing, declared public health emergency, *see* U.S.S.G. § 1B1.13(b)(1)(D), which is not the case here.

In sum, defendant has not met the "extraordinary and compelling reasons" predicate for relief.[5]

Additionally, the relevant sentencing factors under 18 U.S.C. § 3553(a) continue to warrant denying relief under § 3582(c)(1)(A). The sentence must be "sufficient, but not greater than necessary, to comply with the purposes" of sentencing, and factors for the Court to consider include

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C.A. § 3553(a)(1)-(2). As the Court held in denying defendant's first motion, the nature and circumstances of defendant's offenses loom large.[6] These were serious, violent offenses, for which the sentence imposed—which incorporated a downward variance—was, and remains, necessary to promote respect for the law, provide a deterrent function, and to protect the public from an offender who, his reply brief (discussed *infra*) shows, continues to believe his conduct

---

[5] In ruling on defendant's first § 3582 motion, the Court presumed the existence of extraordinary and compelling circumstances based on the government's concession in that respect. (D.E. 122, at 5 n.2.) The government makes no such concession this time, and notes that at the time of the earlier motion, vaccines for Covid were not yet widespread. (D.E. 167, at 1.)

[6] Those considerations are also relevant to determining whether defendant would be a "danger to the safety of any other person or to the community" under U.S.S.G. § 1B1.13(a)(2). *See* 18 U.S.C § 3142(g).

was simply not that bad.  Defendant's  crime spree included multiple bank robberies in which he threatened tellers and, in one instance, pointed a gun directly at a teller.  (PSR ¶¶ 25-39.)  He sought to commandeer multiple cars from people sitting in them, pointing a gun at them or using it to bang on the window, and then took a hostage before being apprehended.  (PSR ¶¶ 40-43.)  The gun defendant used was found to be loaded.  (PSR ¶ 44.)  While in the hospital after his arrest, defendant engineered an escape attempt under the pretense of needing to use the bathroom, and punched a law enforcement officer multiple times, tried to grab the officer's gun, and struck a nurse while attempting to flee.  (PSR ¶ 45.)  These offenses came the year after defendant committed multiple other offenses, at least one of which was violent, for which he continues serving a 13-year sentence imposed in state court.  (PSR ¶ 157-58; D.E. 114-2.)

In his reply brief, defendant insists that he has made "significant rehabilitative efforts" (D.E. 171, at 1), but then goes on to minimize and recharacterize his offense conduct.  Among other claims, he contends that he "has never been directly associated with any physical violence"; that none of his victims "suffered any physical harm during the entire crime spree"; that he "chose to run away during each encounter with his victims," rather than using deadly force on them; that he hadn't readied the gun to be fired; that he intended only to scare his victims; and that his conduct in the hospital was attributable to actions of "dirty cops."  (*Id.* at 1-2.)  He also offers a different version of the facts underlying his state conviction, one in which he acted in self-defense and was injured but no one else was.  (*Id.* at 3.)  Notwithstanding defendant's insistence that he is ready rejoin society and has made efforts to better himself,[7] his

---

[7] The dispute between the government's reading of the BOP's records, in which defendant has made some, but not significant, progress, or defendant's version, in which he has secured necessary documentation, prepared resumes, copiously reads and writes, and maintains social ties, need not be resolved.  The Court does note that defendant's Individualized Needs Plan – Program Review (D.E. 167-4, Ex. D, at 3), dated July 8, 2025, states that defendant "has not

refusal to acknowledge the severity of his conduct and the harm he inflicted on other people suggests there is more work to be done and that continued correctional treatment is warranted.

**IV.    Conclusion**

Defendant's motion is denied.  An appropriate order will follow.


Dated:  June 30, 2026                              *s/ Katharine S. Hayden*
                                                   Katharine S. Hayden, U.S.D.J.

---

adhered to the program recommendations" previously discussed, and "has not completed any education or self-improvement programs since his last review."